# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **THADDEUS FLETCHER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 01-601  (JDB)** |
| ) | |
| **DISTRICT OF COLUMBIA,** *et al.,* ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION

Plaintiff is a District of Columbia Code offender serving a parole revocation sentence imposed by the United States Parole Commission ("Commission").   He alleges that the Commission's application of its reparole guidelines violated the Ex Post Facto Clause of the Constitution.  Plaintiff's claims are brought pursuant to 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Fed. Narcotics Officers*, 403 U.S. 388 (1971).[1]  His amended complaint names as defendants the Commission and present and former Commissioners in their official and personal capacities.  Plaintiff seeks injunctive and declaratory relief against all defendants under § 1983 and money damages from the individually-sued Commissioners under *Bivens*.

Defendants have filed a motion to dismiss the amended complaint.  Based on the parties' filings and the applicable law, the Court concludes that the Commission is not subject to liability

---

[1] Plaintiff has a related habeas corpus action before the Court in Civil Action No. 01-2058.  As noted in the D.C. Circuit's decision remanding that case for further proceedings, "Fletcher now contends that it has always been his intention to pursue his ex post facto claim in a single proceeding." *Fletcher v. Reilly*, 433 F.3d 867, 875 (D.C. Cir. 2006).  This Court and the parties are treating the cases together.

in this case because the United States has not waived sovereign immunity.  Moreover, plaintiff's

claims for money damages under *Bivens* against Commissioners in their personal capacities are

barred by absolute or qualified immunity.  The Court thus concludes that the plaintiff can only

proceed against the present Commissioners in their official capacities on the claim under 42

U.S.C. § 1983 for prospective injunctive and declaratory relief.

## BACKGROUND

This matter has a lengthy history, including three decisions by the D.C. Circuit.  The

relevant background is drawn from the records before this court and, where appropriate, those

earlier decisions.

On March 15, 1980, in the Superior Court of the District of Columbia, plaintiff was

sentenced to a term of 12 to 36 years imprisonment for rape.  Respondent's Opposition to

Petition for Writ of Habeas Corpus ("Resp. Opp."), Exh. A.[2]  Plaintiff was released on parole by

the District of Columbia Board of Parole ("D.C. Board") on October 23, 1990, and ordered to

remain under parole supervision until August 22, 2014.  *Id.* Exh. B.

On August 12, 1994, plaintiff was arrested in Prince George's County, Maryland, and

charged with assault with intent to kill and use of a firearm in a crime of violence.  *Id.* Exh. C.

He pleaded guilty to these charges and received a ten-year sentence, which was later reduced to a

five-year term.  *Id.* Exh. D & Exh. F.  On May 10, 1995, the D.C. Board issued a warrant for

plaintiff's arrest based on this new criminal conduct and administrative parole violations

resulting from his arrest and conviction.  *Id.* Exh. C. The D.C. Board's warrant was lodged as a

detainer while plaintiff served his sentence in Maryland.  *Id.* Exh. E.

---

[2] This factual background is based on the exhibits attached to the Commission's
opposition brief filed in *Fletcher v. Reilly*, No. 01-2058 (D.D.C.).

On August 29, 1998, plaintiff was arrested on the D.C. Board's parole violation warrant. *Id.* Exh. G.  Following a parole revocation hearing in October 1998, the D.C. Board revoked plaintiff's parole and ordered that he be considered for reparole by August 29, 2000.  *Id.* Exh. H. After parole authority over D.C. Code offenders was transferred from the D.C. Board to the Commission, *see* 28 C.F.R. § 2.70, *et seq.*; D.C. Code § 24-131, the Commission held a revocation rehearing.  Resp. Opp., Exh. I.  The Commission determined that plaintiff's parole violation behavior was of Category Eight severity because it involved attempted murder.  *Id.* Based on the calculated salient factor score, the Commission guidelines provided that plaintiff should serve 150+ months before reparole.  *Id.*  The Commission set a presumptive parole date of October 29, 2010.  *Id.*  On February 12, 2002, the Commission reopened plaintiff's case for reconsideration of his salient factor score.  *Id.* Exh. L.  On August 14, 2002, the Commission reduced the guideline range to 120+ months, with a presumptive parole date of October 29, 2007. Petitioner's Amended Response, *Fletcher*,  No. 01-2058, Exh. C.

Plaintiff initiated this action *pro se.*[3]   He contended that the application of the Commission's reparole guidelines instead of the D.C. Board guidelines in effect at the time of his original offense increased his length of incarceration and violated the Ex Post Facto Clause. Complaint ("Compl.") at 6-8.  The case was brought pursuant to 42 U.S.C. § 1983 against the District of Columbia, several of its agencies and employees, and against the Commission, its commissioners, and certain Commission employees.  *Id.* at 5-6.[4]  Plaintiff named the defendants in their individual and official capacities and alleged that they acted under the color of District of

---

[3] Plaintiff is now represented by appointed counsel.

[4] The amended complaint, filed by counsel subsequently, added a claim under *Bivens*. Amend. Compl. ¶ 3.

Columbia law. *Id.* at 10.  Plaintiff sought a declaration that defendants' actions were unconstitutional and an award of compensatory and punitive damages.  Compl. at 9.

On July 2, 2002, the Court dismissed plaintiff's complaint without prejudice on the ground that his damages claim was precluded by *Heck v. Humphrey*, 512 U.S. 477 (1994), because a judgment in plaintiff's favor would be equivalent to a determination that his parole revocation detention was unlawful.  As a result, this Court held, plaintiff had to pursue his claim through a habeas petition before he could file a suit for damages.

Plaintiff appealed, and in *Fletcher v. Dist. of Columbia*, 370 F.3d 1223 (D.C. Cir. 2004)(*Fletcher I)*, the court of appeals held that plaintiff did not have to pursue a habeas remedy before bringing his claim pursuant to 42 U.S.C. § 1983.  *Id.* at 1227.  Construing plaintiff's *pro se* complaint as naming members of the Commission, the court also ruled that individual members of the Commission were amenable to suit under § 1983 because their actions were taken pursuant to a statute that applied solely to the District of Columbia, the National Capital Revitalization and Self-Government Improvement Act of 1997 ("Revitalization Act"), Pub. L. 105-33, 111 Stat. 712.  *Id* at 1227 & n. *.[5]  However, the court rejected plaintiff's claim on the merits, on the ground that a parole guideline is not a "law" subject to the prohibitions of the Ex Post Facto Clause.  *Id.* at 1228.[6]

Plaintiff filed a petition for rehearing, relying on *Garner v. Jones*, 529 U.S. 244 (2000). In *Garner*, the Supreme Court held that a non-binding parole regulation was subject to the Ex

---

[5] This statute dissolved the D.C. Board and transferred parole authority over D.C. offenders to the Commission.  *Id.*

[6] This Court's dismissal of the District of Columbia defendants was affirmed.  *See id.* at 1225 n. **.

4

Post Facto Clause, and that, to succeed on such a challenge, a claimant must show that

retroactive application of the parole regulation creates "a significant risk of increasing the

measure of punishment attached to the covered crimes." *Id.* at 250.  Upon rehearing, the court of

appeals vacated its previous judgment and remanded the matter to this Court for further

proceedings consistent with *Garner*.  *Fletcher v. Dist. of Columbia*, 391 F.3d 250, 251 (D.C. Cir.

2004)(*Fletcher II*).

Meanwhile, the dismissal of plaintiff's habeas petition was also reviewed by the court of

appeals, which remanded that case with the following explanation:

> Fletcher has made out a prima facie case that his rights under the Ex Post Facto
> Clause have been violated, because he is a D.C. Code offender whose parole was
> revoked based on an offense that was not a D.C. Code offense.  Under these
> circumstances, the facial distinctions between the Board's regulations and the
> federal regulations that replaced them, specifically the fact that the new federal
> regulations, unlike the regulations they replaced, do not take post-incarceration
> behavior into account, is sufficient to warrant factual development on his habeas
> petition.  Under *Garner* and *Fletcher II*, Fletcher is entitled to a searching
> comparison of the old and new reparole regimes in order to determine whether the
> U.S. Parole Commission's application of the federal reparole regulations at
> Fletcher's reparole hearing in 2000 created a significant risk that he will be
> subjected to a lengthier incarceration than he would have been if the Commission
> had adhered to the rules and practices of the D.C. Board.

*Fletcher v. Reilly*, 433 F.3d 867, 879 (D.C. Cir. 2006)(*Fletcher III*).  Over the past year, the

parties have engaged in extensive discovery to accomplish the contemplated "factual

development."

## DISCUSSION

Defendants move to dismiss for lack of subject matter jurisdiction, lack of personal

jurisdiction over the individual defendants, improper venue, and for failure to state a claim, all

pursuant to Fed. R. Civ. P. 12(b).  Defendants also contend that plaintiff's suit is barred by the

statute of limitations.  The Court will address the issues raised by defendants' motion in turn.

## I.       42 U.S.C. § 1983 Claim

Defendants contend  that the doctrine of sovereign immunity bars plaintiff's claim under 42 U.S.C. § 1983.  Sovereign immunity is a jurisdictional issue.  *Brown v. Sec'y of Army*, 78 F.3d 645, 648 (D.C. Cir. 1996).  If the United States has not waived sovereign immunity, the court must dismiss for lack of jurisdiction.  *First Va. Bank v. Randolph*, 110 F.3d 75, 77 (D.C. Cir. 1997).  A plaintiff has the burden of proving subject matter jurisdiction by a preponderance of the evidence.  *Felter v. Norton*, 412 F. Supp. 2d 118, 122 (D.D.C. 2006)(citation and quotation omitted).

The United States is immune from suit absent its explicit consent to be sued.  *Lehman v. Nakshian*, 453 U.S. 156, 160 (1981); *Kugel v. United States*, 947 F.2d 1504, 1506 (D.C. Cir. 1991).   Sovereign immunity bars all suits against the United States, its agencies, and federal employees in their official capacities, except where there has been a statutory waiver of immunity.  *United States v. Mitchell*, 445 U.S. 535, 538 (1980).  The United States "may not be sued without its consent" and "the existence of consent is a prerequisite for jurisdiction."  *United States v. Mitchell*, 463 U.S. 206, 212 (1983).  A waiver of "sovereign immunity must be unequivocally expressed in statutory text" and will not be implied.  *Lane v. Pena*, 518 U.S. 187, 192 (1996); *Settles v. United States Parole Comm'n*, 429 F.3d 1098, 1105 (D.C. Cir. 2005)(citations omitted).  The scope of a sovereign immunity waiver is to be strictly construed in favor of the sovereign.  *Dep't of the Army v. Blue Fox*, 525 U.S. 255, 261 (1999).  The sovereign's consent to a particular remedy must also be unambiguous.  *Dep't of the Army v. Fed. Labor Relations Auth.*, 56 F.3d 273, 277 (D.C. Cir. 1995).

Here, plaintiff concedes that he only seeks prospective declaratory and injunctive relief under § 1983 against the Commission and its officers, that he does not seek money damages against the Commission or the individual Commissioners in their official capacities, and hence that money damages are sought only against the individual (past) Commissioners in their personal capacities under *Bivens*.  *See, e.g.,* Pl.'s Opp. to Deft. Comm'n's Mot. to Dismiss, p. 10; Pl.'s Opp. to Mot. to Dismiss, p. 10; Pl.'s Supp. Mem. in Opp. to Mot. to Dismiss, p. 4.  For good reason, the Court concludes, as it is plain that money damages are not available against the Commission or the Commissioners in their official capacities.  Moreover, as the D.C. Circuit has already concluded, the Commission cannot be sued under § 1983.  However, defendants overreach in contending that injunctive relief is unavailable under § 1983 against the Commissioners in their official capacities.

In *Settles*, the D.C. Circuit addressed whether the Commission was subject to § 1983 liability for parole decisions regarding D.C. Code offenders.  The Court first found that nothing in the statutory text or legislative history indicated that Congress intended federal agencies to be subject to § 1983.  *Settles*, 429 F.3d at 1105.  In addition, the Court concluded that there was no evidence that by enacting the Revitalization Act, Congress intended to waive the Commission's immunity to suit under § 1983.  *Id.* at 1106.

Plaintiff argues that in *Fletcher I*, the court "implicitly rejected" the Commission's defenses, including the assertion of sovereign immunity.  Pl.'s Opp. to Mot. to Dismiss, p. 5. That claim is without merit.  There is not even a hint or suggestion in *Fletcher I* that sovereign immunity was an issue raised by the Commission and rejected by the Court.  And even if that defense was not raised by the Commission, it could still be considered here because it is a

jurisdictional issue and may be raised at any time.  *Settles*, 429 F.3d at 1105; *Brown*, 78 F.3d at

648.  Finally, the court in *Settles* concluded that *Fletcher I* does not support the position

advocated by plaintiff here:

> Nothing in our decision in *Fletcher I*, which held that in regard to D.C. Code offenders
> the Commission acts pursuant to an "Act of Congress applicable exclusively to the
> District of Columbia," requires the conclusion that when the Commission acts pursuant to
> the Revitalization Act, it loses its character as a federal agency and becomes for purposes
> of § 1983 a mere organ of the District of Columbia, which, as a municipality, enjoys no
> sovereign immunity.

*Settles*, 429 F.3d at 1006 (citations omitted).   Hence, "the Commission retains the immunity it is

due as an arm of the federal sovereign."  *Id.*

Having determined that sovereign immunity shields the Commission from money

damages under § 1983, the question remains as to the liability of the present and former

Commissioners sued in their official capacities.  In *Fletcher I*, the court of appeals concluded that

members of the Commission are amenable to suit under § 1983 for parole actions taken pursuant

to the Revitalization Act.  *Fletcher I*, 370 F.3d at 1227.  *Settles* expressly confirms that holding:

"Left standing is the holding in *Fletcher I* that a cause of action under § 1983 will lie against the

individual members of the Commission when acting pursuant to the Revitalization Act ...." 429

F.3d at 1104.  However, government officials sued in their official capacities are not personally

liable for damages because a suit against the government official in an official capacity is

effectively an action against the government.  *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985);

*Atchinson v. Dist. of Columbia*, 73 F.3d 418, 424 (D.C. Cir. 1996); *see Wilburn v. Robinson*, No.

05-7110, slip op. at 15 (D.C. Cir. Mar. 20, 2007).  A suit for damages under § 1983 against

government employees in their official capacities is the equivalent of an action against the

government entity itself, then*,* and the claims will be barred because any monetary recovery will

come from the government treasury. *Vakassian v. Washington Metro. Transit Auth.*, No. 05-741, 2005 WL 3434794, at *4 (D.D.C. Dec. 14, 2005).  Because the Commission is entitled to sovereign immunity from plaintiff's damages action, claims for damages against the individual members of the Commission in their official capacities likewise must be dismissed.  *Weakes v. FBI-MPD Safe Streets Task Force*, No. 05-595, 2006 WL 212141, at *2 (D.D.C. Jan. 27, 2006).

Section 1983 does not provide jurisdiction for plaintiff's prospective injunctive and declaratory relief claims against the Commission.  The *Settles* decision did not limit its holding to monetary damages:  "Despite its role in administering parole for D.C. Code offenders, the Commission retains the immunity it is due as an arm of the federal sovereign." *Settles*, 429 F.2d at 1106.[7]  *Settles* clearly indicates that the Commission is not subject to liability at all under § 1983.  *Id.* at 1105; *see also id.* 1106 ("sovereign immunity blocks a § 1983 action against the Commission").

As recognized in *Fletcher I*, however, plaintiff can proceed against the individual members of the Commission in their official capacities for injunctive relief because they were acting under a federal law applicable exclusively to the District of Columbia.  *Fletcher I*, 370 F.3d at 1227.  State sovereign immunity is not waived under § 1983.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  That immunity, however, does not extend to injunctive relief against officials in their official capacities.  *Ali v. Dist. of Columbia*, 278 F.3d 1, 7 (D.C. Cir. 2002); *Vakassian*, 2005 WL 3434794, at *4.[8]  Thus, plaintiff may pursue prospective

_____

[7] In *Settles*, plaintiff requested declaratory and injunctive relief.  *See Settles*, 429 F.3d at 1101.  In deciding that the Commission enjoyed sovereign immunity from suit, the court did not expressly distinguish between monetary and non-monetary relief.

[8] The court in *Settles* noted that under *Fletcher I* individual Commissioners could be sued under § 1983, but declined to construe Settles' complaint, filed by counsel, as being against

injunctive and declaratory relief against the present individual Commissioners in their official capacities.[9]

Although conceding that he cannot recover money damages under § 1983, plaintiff contends that his claim for prospective injunctive relief against the Commission is not barred.[10] He cites Section 702 of the Administrative Procedure Act ("APA"), which provides, in relevant part, that

> [a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to individual review thereof.  An action in a court of the United States *seeking relief other than money damages* and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official  capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable  party.

5 U.S.C. § 702 (emphasis supplied).   This provision operates as a waiver of sovereign immunity for any suit seeking non-monetary relief against a United States agency or officer acting in an official capacity.  *Chamber of Commerce of the United States v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996); *Clark v. Library of Congress*,  750 F.2d 89, 102 (D.C. Cir. 1984); *see also Lane*, 581

---

individual Commissioners as well as the Commission.  *See* 429 F.3d at 1106-07.  Of course, from a *practical* perspective, an action for injunctive or declaratory relief against Commissioners in their official capacities will be no different than an action against the Commission.  *See, e.g., Will*, 491 U.S. at 71 ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself.")

[9]  Prospective injunctive relief against the former Commissioners makes no sense as they cannot act on future parole or reparole matters involving plaintiff or anyone else.  Nor can present Commissioners act on such future matters in a personal capacity; rather, they act officially as agents of the government entity.

[10]  As noted earlier, despite statements in the amended complaint to the contrary, plaintiff now asserts that his claims against the defendants under § 1983 are for prospective equitable relief only.  *See, e.g.,* Pl.'s Supp. Opp. to Commn's' Mot. to Dismiss, p. 2 n. 2.

U.S. at 196 (APA's statutory scheme allows federal government to waive sovereign immunity against liability without waiving immunity from  monetary damages).  The sovereign immunity waiver applies even if the cause of action is not brought under the APA.  *Chamber of Commerce*, 74 F.3d at 1328.

Under the APA, however, an individual is only entitled to judicial review of a "final agency action for which there is no other adequate remedy in court." 5 U.S.C. § 704.  Although the APA has a presumption of judicial review, its provisions do not apply if (1) "statutes preclude judicial review" or (2) "agency action is committed to agency discretion by law." *Corel Corp. v. United States*, 165 F. Supp. 2d 12, 28 (D.D.C. 2001)(quoting *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1513 (D.C. Cir. 1989), and 5 U.S.C. § 701(a)(1)-(2)).  Consequently, the APA's sovereign immunity waiver does not apply where statutes preclude judicial review or agency action is committed to agency discretion by law.  *See Leistiko v. Stone*, 134 F.3d 817, 820 (6th Cir. 1998)(waiver inapplicable to extent other statutes preclude judicial review); *Sharp v. Weinberger*, 798 F.2d 1521, 1523 (D.C. Cir. 1986)(waiver does not apply if "any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought")*; Clark*, 750 F.2d at 102 (waiver does not apply where defendant not an "agency" as defined by the APA); *Dronenburg v. Zech*, 741 F.2d 1388, 1390-91 (D.C. Cir. 1984)(same); *Cobell v. Babbitt*, 30 F. Supp. 2d 24, 32-33 (D.D.C. 1998)(APA waiver does not apply to the extent that an agency's action discretionary by law).

Parole decisions by the Commission are committed to the agency's discretion and are thus exempt from review under the APA. 18 U.S.C. § 4218(d); *see also Turner v. Henman*, 829 F.2d 612, 614 (7th Cir. 1987); *Payton v. United States*, 679 F.2d 475, 484 n. 5 (5th Cir. 1982);

*United States ex. rel. v. Graber*, No. 03-4917, 2003 WL 22956008, at *1 n. 3 (N.D. Ill. Dec. 11,

2003); *Lyle v. Sivley*, 805 F. Supp. 755, 759 (D. Ariz. 1992).  Plaintiff's challenge to the

Commission's reparole decision is not subject to APA review, and the general waiver of

sovereign immunity in § 702 of the APA does not enable plaintiff to proceed with his action for

injunctive relief against the Commission under § 1983, particularly in light of *Settles*.

## II.    *Bivens* Claim

Plaintiff brings a *Bivens* claim for money damages against the Commissioners in their

personal capacities for the promulgation of the federal reparole guidelines, which abrogated the

D.C. guidelines, and the application of those guidelines in the Commission's decision on

plaintiff's reparole.  The Commissioners assert that they are entitled to absolute immunity for the

reparole decision or, at a minimum, qualified immunity.[11]

In *Bivens*, the Supreme Court recognized an action for money damages against a federal

officer in his or her individual capacity who abuses his or her constitutional authority. *Corr.*

*Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001); *Thompson v. Pope*, 397 F. Supp. 2d 28, 32

(D.D.C. 2005).  The purpose of *Bivens* is to deter federal officers from committing violations of

an individual's constitutional rights.  *Malesko*, 534 U.S. at 70; *FDIC v. Meyer*, 510 U.S. 471, 485

(1994).  Plaintiff cannot pursue a *Bivens* claim against the Commission.  A  *Bivens* action cannot

be brought against a federal agency. *Id.* at 486.  *Bivens* "implied a cause of action against federal

officials ... *because* a direct action against the Government was not available."  *Meyer*, 510 U.S.

at 485 (emphasis in original).  *Bivens* does not provide an avenue for plaintiff's injunctive relief

---

[11] As explained below, the application of the guidelines to plaintiff in the 2000 reparole
decision is the only proper basis for plaintiff's *Bivens* claim.  Logically, that claim can only lie
against the Commissioners in office then – who applied the guidelines and made the decision on
plaintiff's reparole.

claim against the Commission or its members in their official capacities.

To prevail in a *Bivens* action, a plaintiff must "demonstrate an injury consequent upon the violation" of his constitutional rights by federal employees. *Bivens*, 403 U.S. at 397; *see also Butz v. Economou*, 438 U.S. 478, 486 (1978)("*Bivens* established that *compensable injury* to a constitutionally protected interest could be vindicated by a suit for damages")(emphasis supplied). Under this standard, plaintiff's claims regarding the promulgation of the reparole guidelines must be dismissed because plaintiff cannot demonstrate that he has suffered a concrete injury or harm by the mere enactment of the guidelines. Rather, it is the application of the reparole guidelines to plaintiff that, if proven to be unconstitutional, would support a viable *Bivens* claim. The Court rejects plaintiff's inventive argument that his cause of action is neither the promulgation nor the application of the regulation, but rather something in between – the failure over time to promulgate and follow a proper regulation in line with the prior D.C. Board policy. Plainly, plaintiff's actionable injury arises from the application of the federal guideline to his case in 2000, not from some abstract continuing failure. Therefore, plaintiff's *Bivens* claim will be evaluated on the basis of the application of the Commission's guidelines to him by those Commissioners involved in the decision to deny him reparole.

### A.       Absolute Immunity

The Commissioners assert that they are absolutely immune from suit based on their reparole decision because their duties as Commissioners are quasi-judicial in nature. Where absolute immunity applies, an official is protected from all suits challenging conduct within the scope of the immunity. *Gray v. Poole*, 243 F.3d 572, 575 (D.C. Cir. 2001). Some officials perform "special functions ... which deserve absolute protection from damages liability."

*Buckley v. Fitzsimmons*, 509 U.S. 259, 260 (1993).  In determining whether absolute immunity applies, the court is to apply a "functional approach" that examines the nature of the function performed by the official, rather than his or her title.  *Id.* at 269.  The official claiming the immunity "bears the burden of showing that such immunity is justified for the function in question." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 432 n. 4 (1993)(citing *Burns v. Reed*, 500 U.S. 478, 486 (1991)).

Officials performing judicial functions have absolute immunity from civil liability based on their judicial actions.  *Forrester v. White*, 484 U.S. 219, 228-29 (1988).  Courts have extended absolute immunity to a wide range of persons playing a role in the judicial process.  These include prosecutors, *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976); law clerks, *Sindram v. Suda*, 986 F.2d 1459, 1460 (D.C. Cir.1993); and probation officers, *Turner v. Barry*, 856 F.2d 1539, 1541 (D.C. Cir.1988).  When approaching the issue of quasi-judicial immunity, a court should consider three primary factors: (1) whether the functions of the official in question are comparable to those of a judge; (2) whether the nature of the controversy is intense enough that future harassment or intimidation by litigants is a realistic prospect; and (3) whether the system contains safeguards which are adequate to justify dispensing with private damage suits to control unconstitutional conduct. *Simons v. Bellinger*, 643 F.2d 774, 778 (D.C. Cir. 1980)(citing *Butz*, 438 U.S. at 512); *Wagshal v. Foster*, 28 F.3d 1249, 1252 (D.C. Cir.1994)

Several circuits have held that quasi-judicial absolute immunity applies to parole officers or members of a parole board.  *See Anderson v. Georgia State Pardons & Parole Bd.*, 165 Fed. Appx. 726, 730 (11th Cir.), *cert. denied*, 126 S.Ct. 95 (2006); *Figg v. Russell*, 433 F.3d 593, 600 (8th Cir. 2006); *Palismo v. California Dep't of Corrs.*, 145 Fed. Appx. 215, 216 (9th Cir. 2005);

*Richman v. Sheahan*, 270 F.3d 430, 435 (7th Cir. 2001); *Mee v. Ortega,* 967 F.2d 423, 429 (10th Cir. 1992); *Thompson v. Burke*, 556 F.2d 231, 236 (3rd Cir. 1977).  Two judges of this district court agree.  *See Pate v. United States*, 277 F. Supp. 2d 1, 11 (D.D.C. 2003); *Merki v. Baer*, No. 89-0101, 1990 WL 113890, at *2 (D.D.C. Jul. 24, 1990).  These courts have reached this conclusion because parole board officials "perform functionally comparable tasks to judges when they decide whether to grant, deny, or revoke parole." *Merki*, 1990 WL 113890, *2 (citation and quotation omitted).  As one court has observed:

> The daily task of both judges and parole board officials is the adjudication of specific cases or controversies.  Their duty is often the same: to render impartial decisions in cases and controversies that excite strong feelings because the litigant's liberty is at stake.  They face the same risk of constant unfounded suits by those disappointed by the parole board's decisions .... Just as the decision-making process of judges must be kept free from fear, so must that of parole board officials.

*Sellars v. Procunier*, 641 F.2d 1295, 1303 (9th Cir. 1981).

Plaintiff contends that the Commissioners are not entitled to quasi-judicial immunity because he is challenging the promulgation of new parole guidelines, which is an administrative or policy-making function.  It is true that the Supreme Court has rejected absolute immunity for judges acting in an administrative capacity.  *See Forrester*, 484 U.S. at 229.  But as noted above, plaintiff's only viable *Bivens* claim concerns the application of the reparole guidelines specifically in plaintiff's case.  That is not an administrative decision, but a quasi-judicial one.  Plaintiff offers no reason why absolute immunity should not apply with respect to his reparole determination.  Therefore, the Court finds that the Commissioners are entitled to absolute immunity with respect to plaintiff's *Bivens* claim that is based on the specific parole decision relating to plaintiff.

### B.      Qualified Immunity

The individual Commissioners also move to dismiss the *Bivens* claims against them in their personal capacities based on qualified immunity.  "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages" if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *Barham v. Ramsey*, 434 F.3d 565, 572 (D.C. Cir. 2006).  In deciding whether the plaintiff's allegations are sufficient to defeat a qualified immunity defense, a court must follow a two-step inquiry to determine (1) whether a constitutional right was violated on the facts alleged; and (2) assuming the violation is established, whether the right was clearly established.  *Saucier v. Katz*, 533 U.S. 194, 200 (2001).  In some cases, "the initial, and ultimately dispositive, inquiry is whether the facts alleged by plaintiff show that the ... [defendants'] conduct violated a constitutional right."  *Maye v. Reno*, 231 F. Supp. 2d 332, 337 (D.D.C. 2002); *see Wilson v. Layne*, 526 U.S. 603, 609 (1999)("A court evaluating a claim of qualified immunity must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all.").

But even assuming such a violation, in order to defeat a qualified immunity defense the constitutional right must be clearly established, i.e., the "relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Saucier*, 533 U.S. at 202.  "The contours of the right" must be sufficiently clear so that a reasonable official would understand that his conduct violated an individual's rights.  *Anderson*, 483 U.S. at 640; *Barham*,

434 F.3d at 572.  A court should dismiss a *Bivens* claim against an individual official where he was not on notice that his conduct was unlawful.  *Briscoe v. Potter*, 355 F. Supp. 2d 30, 47 (D.D.C. 2004).

The constitutional right raised here is whether the Ex Post Facto Clause was violated when the Commission determined plaintiff's "parole eligibility date on the basis of parole regulations and guidelines promulgated after the crime for which he was incarcerated."  *Fletcher I*, 370 F.3d at 1225.  The Ex Post Facto Clause prohibits retroactive application of a law that increases the punishment for a crime that an individual has already committed.  *Collins v. Youngblood*, 497 U.S. 37, 42 (1990).  A statute that retroactively increases the penalties upon parole revocation would also be unconstitutional.  *Johnson v. United States*, 529 U.S. 694, 701 (2000).  To establish such a violation here, plaintiff "'must show that as applied to [him] the [parole guidelines] created a significant risk of increasing his punishment.'"  *Fletcher II*, 391 F.3d at 251 (quoting *Garner*, 529 U.S. at 255).  If the facts alleged by plaintiff were proven, this Court assumes that in light of *Garner* and *Fletcher II* they would establish a violation of plaintiff's constitutional rights.

Hence, the second step of the qualified immunity test – whether the constitutional right was clearly established – must be reached here.  Plaintiff's claim is based primarily on the Supreme Court's decision in *Garner,* which was decided in March 2000, four months prior to the Commission's finalizing of its reparole guidelines and nine months before the Commission's application of those guidelines and final notice of action in plaintiff's case.  To determine whether the Commissioners violated clearly established law, then, the Court must first examine what was actually decided in *Garner*.

17

The precise question before the *Garner* Court was "whether the retroactive application of a Georgia law permitting the extension of intervals between parole considerations violates the *Ex Post Facto* Clause." *Garner*, 529 U.S. at 246.   The Supreme Court reversed the Eleventh Circuit's holding "that retroactive application of the change in the law was necessarily an *ex post facto* violation." *Id.*   The Court noted that whether retroactive application of a new parole rule was prohibited "is often a question of particular difficulty when the discretion vested in a parole board is taken into account." *Id.*   Consequently, the Supreme Court has not adopted a single formula for analyzing parole regulations.  *Id.* at 252.   Instead, the issue will turn on the particulars of the parole system involved, the amount of discretion parole officials have, and how the new rule and that discretion was historically applied "in its operation." *See id.* at 255-57; *see also Fletcher III*, 433 F.3d at 876-77.  Hence, as the D.C. Circuit has noted in this case, categorical distinctions have been foreclosed by *Garner*, and a claimant "must show that as applied to his own sentence the [new] law created a significant risk of increasing his punishment." *Fletcher II*, 391 F.3d at 251; *see also Fletcher III*, 433 F.3d at 877-78 (controlling inquiry is one of the "practical effect" of the application of the new rule).  *Garner* only holds that a parole regulation *may* be the basis for an ex post facto claim.  And the D.C. Circuit has – long after *Garner* and the 2000 reparole decision regarding plaintiff – concluded only that a "searching comparison of the old and new reparole regimes" is needed to determine whether any ex post facto violation has occurred.  *Fletcher III*, 433 F.3d at 879.

This is hardly the material of which the violation of a "clearly established" constitutional right is made.  To prevail on an ex post facto claim, a parolee is required to demonstrate that a sufficient risk of increased punishment is either inherent in the regulation or by its actual

implementation. *Dyer v. Bowlen*, 465 F.3d 280, 288-89 (6th Cir. 2006). The parolee "must demonstrate, by evidence drawn from the rule's practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the earlier rule." *Garner*, 529 U.S. at 255. Without proof that the regulation "as applied to his own sentence" increases, "to a significant degree, the likelihood or probability of prolonging [his] incarceration," plaintiff's constitutional claim remains speculative. *Id.* at 255-56.

The individual defendants are clearly entitled to qualified immunity here. Whether plaintiff's constitutional rights were violated at his reparole hearing is the very issue in this case, and has been the subject of a year of extensive discovery. Assuming that such a violation occurred, defendants were certainly not on notice that their conduct was unlawful. There has been no decision of the Supreme Court or the courts in this district holding that the application of the Commission's reparole guidelines to D.C. Code offenders *is* an ex post facto violation.[12] Accordingly, the individual Commissioners did not violate clearly established law at plaintiff's reparole hearing in 2000. Instead, plaintiff simply has a viable claim warranting exploration.

The individual commissioners in their personal capacities are therefore entitled to qualified immunity on plaintiff's *Bivens* claims. Qualified immunity only applies to claims for money damages and does not extend to claims for injunctive or declaratory relief. *Meredith v.*

---

[12] Plaintiff asserts that defendants should have been aware of the ex post facto violation because of the decision in *Blair-Bey v. Quick*, 159 F.3d 591 (D.C.Cir. 1998). In that case, the court of appeals did not conclude that the Commission's application of its guidelines, instead of the D.C. Board's guidelines, violates the Constitution. The court merely gave the parolee the opportunity to prove that the revisions to the guidelines were "totally or very substantially circumscribed in law or in fact, and yield results materially harsher than those ordinarily occurring under the prior regime." *Id.* at 592.

*Fed. Mine Safety and Health Review Comm'n*, 177 F.3d 1042, 1049 (D.C. Cir. 1999).  Therefore, plaintiff's § 1983 claims for prospective injunctive and declaratory relief can proceed against the individual defendants in their official capacities.

## III.    Personal Jurisdiction

Plaintiff bears the burden of establishing personal jurisdiction over each defendant.[13]
*Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 42 (D.D.C. 2003).  In order to meet his burden, plaintiff must allege specific facts on which personal jurisdiction can be based; he cannot rely on conclusory allegations.  *Id.*  Furthermore, plaintiff cannot aggregate allegations concerning multiple defendants in order to demonstrate personal jurisdiction over any individual defendant.  *Id.*  However, plaintiff need only make a *prima facie* case for personal jurisdiction to survive a motion to dismiss.  *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988).

In deciding a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), the Court need not treat plaintiff's allegations as true.  *Atlantigas Corp.*, 290 F. Supp. 2d at 42.   Rather, the Court may consider and weigh affidavits and other relevant matter in making the jurisdictional determination.  *Id.*  Hence, a court may consider materials outside the pleadings in ruling on a motion to dismiss for lack of personal jurisdiction.  *Artis v. Greenspan*, 223 F. Supp. 2d 149, 152 (D.D.C. 2002).

As one of the bases for personal jurisdiction over the individual Commissioners here,

---

[13] The personal jurisdiction issue relates only to the individual Commissioners sued in their personal capacities – i.e., on the *Bivens* claim raised in the amended complaint filed in April 2006.  No personal jurisdiction issue exists with respect to individual Commissioners sued in their official capacities; indeed, *Fletcher I* and *Fletcher II* recognize no issue of personal jurisdiction.

plaintiff cites D.C. Code § 13-422, which provides jurisdiction "over a person domiciled in, organized under the laws of, or maintaining his or its principal place of business" in the District of Columbia.   Plaintiff alleges that defendant Janie Jeffers, a former Commissioner, is subject to jurisdiction under this statute.   In support, plaintiff has submitted a declaration from Rashida Ogletree, an attorney with the Public Defender Service for the District of Columbia.   Mr. Ogletree states that during his investigation, he uncovered documents indicating that: (1) from October 1991 to December 2004, Ms. Jeffers had an "active address" in the District; (2) Ms. Jeffers settled a lawsuit in D.C. Small Claims Court in January 2001; (3) Ms. Jeffers was issued a social security number in the District between 1963 and 1965; and (4) members of her family reside in the District.   Decl. of Rashida Ogletree ¶ 2(a)-(d).   For her part, Ms. Jeffers states that she has been domiciled exclusively in Maryland since 1992.   Decl. of Janie J. Jeffers ¶ 2.   She is a consultant with her principal place of business in Maryland and her principal client is in Virginia.   *Id.* ¶ 3.   Ms. Jeffers also teaches at Howard University and serves on a number of boards of non-profit organizations in the District.   *Id.*

Plaintiff has failed to show that defendant Jeffers was or is domiciled in the District. Even if she were, it would not establish jurisdiction over the other individual defendants.   As noted above, plaintiff cannot use one defendant's possible ties to the forum and apply them to another defendant.   Plaintiff therefore has not established personal jurisdiction based on residence in the District.

Indeed, none of the individually-named defendants appears to reside in the District of Columbia.   Moreover, the principal office of the Commission is located in Maryland.   *Terry v. U.S. Parole Comm'n*, 741 F.Supp. 282, 284 (D.D.C. 1990).   The District of Columbia long-arm

statute, D.C. Code § 13-423, then, is the only basis upon which personal jurisdiction may be exercised over defendants who do not reside within or maintain a place of business in the District of Columbia.  *See Reuber v. United States*, 750 F.2d 1039, 1040 (D.C. Cir. 1984); *Robertson v. Merola*, 895 F.Supp. 1, 3 (D.D.C. 1995).  The long-arm statute provides that a Court may exercise personal jurisdiction over those who have (1) transacted business in the District of Columbia; (2) contracted to supply services in the District of Columbia; (3) caused a tortious injury in the District of Columbia by an act or omission in the District; or (4) caused a tortious injury in the District of Columbia by an act or omission outside the District while regularly doing or soliciting business or engaging in any other persistent course of conduct in the District.  D.C. Code § 13-423(a)(1)-(4)(2006).

Plaintiff claims the existence of personal jurisdiction based on defendants' "transacting any business in the District of Columbia."  D.C. Code § 13-423(a)(1).  This provision is to be given "an expansive interpretation that is coexistent with the due process clause."  *Helmer v. Doletskaya*, 393 F.3d 201, 205 (D.C. Cir. 2004).  Defendants are subject to personal jurisdiction in the forum if they purposely "establish minimal contacts" such that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  For there to be personal jurisdiction under the long-arm statute, a plaintiff must allege some specific facts evincing purposeful activity by defendants in the District of Columbia, by which they invoked the benefits and protections of its laws, and specific acts connecting the defendants with the forum.  *See Cellutech v. Centennial Cellular Corp.*, 871 F.Supp. 46, 48 (D.D.C. 1994).  A defendant must "reasonably anticipate "being haled into" the plaintiff's chosen forum.  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286,

297 (1980).

Several factors lead the Court to conclude that defendants are amenable to suit in this district. The Parole Commission supervises D.C. prisoners and parolees. Parole violation warrants are often requested from parole officers working in the District. Arrested parole violations are often incarcerated at the D.C. Jail awaiting revocation hearings. Supervision over D.C. Code offenders was granted to the Commission under D.C. law. *See Fletcher I*, 370 F.3d at 1225. Plaintiff's parole revocation hearing was held at a D.C. facility, the Lorton Correctional Facility. *Id.* Given these circumstances, it is reasonable to conclude that the individual defendants engage in "business" activities in the District and certainly could have anticipated being haled into court here. Indeed, the Court is aware that there are frequently cases in this district in which the Commission and its members are defendants. Therefore, the Court finds that it has personal jurisdiction over the individual defendants sued in their personal capacities.

## IV.    Venue

Defendants also move to dismiss the complaint based on improper venue. In ruling on such a motion, the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *Darby v. U.S. Dep't of Energy*, 231 F. Supp. 2d 274, 277 (D.D.C. 2002); *2215 Fifth St. Assocs. v. U Haul Int' l, Inc.*, 148 F. Supp. 2d 50, 54 (D.D.C. 2001). The Court, however, need not accept the plaintiff's legal conclusions as true. *2215 Fifth St. Assocs.*, 148 F. Supp. 2d at 54. To prevail on a motion to dismiss for improper venue, a defendant must present facts that will defeat a plaintiff's assertion of venue. *Id.*

Venue for plaintiff's claims against the defendants in their individual capacities is determined under 28 U.S.C. § 1391(b). *See Stafford v. Briggs*, 444 U.S. 527, 544 (1980).

Where, as here, the Court's jurisdiction is not based solely on diversity of citizenship, venue is proper in "(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(b).  The purpose of venue statutes is to protect "'a defendant from the inconvenience of having to defend an action in a trial court that is either remote from the defendant's residence or from the place where the acts underlying the controversy occurred.'" *Modaressi v. Vedadi*, 441 F. Supp. 2d 51, 53 (D.D.C. 2006) (quoting *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1576 (Fed. Cir. 1990)).

        The venue requirements are liberally interpreted in this district.  *El-Bey v. United States*, No. 04-1231, 2004 WL 2418306, at *2 (D.D.C. Sept. 28, 2004).  Venue is proper if the "activities that transpired in the forum district were not insubstantial in relation to the totality of the events" alleged by plaintiff.  *Lamont v. Haig*, 590 F.2d 1124, 1134 n. 62 (D.C. Cir. 1978).  Nevertheless, venue challenges should be examined carefully to ensure that a party is not manufacturing venue in the District of Columbia.  *Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C. Cir. 1993).

        Defendants contend that venue is improper in this district because none of the defendants resides in the District of Columbia and none of the events relevant to this case occurred here. This argument lacks merit.  At issue is the application of the Commission's guidelines instead of the D.C. parole guidelines at plaintiff's reparole hearing.  That hearing occurred at the Lorton Correctional Facility in Virginia, which was considered to be a District of Columbia penal

24

institution.  *See Stokes v. U.S. Parole Comm'n*, 374 F.3d 1235, 1238 n.* (D.C. Cir. 2004);

*Fletcher I*, 370 F.3d at 1225; *Crawford v. Jackson*, 323 F.3d 123, 125 (D.C. Cir. 2003).

Moreover, plaintiff was convicted in the District of Columbia.  The guidelines promulgated and

applied to plaintiff by the Commission were specifically tailored to D.C. Code offenders.  *See* 28

C.F.R. § 2.65.

The venue statute does not require a plaintiff to establish that every event that supports

his claim occurred in the chosen forum.  *Modaressi*, 441 F. Supp. 2d at 57.  Rather, a plaintiff

need only show that "'*a* substantial *part* of the events or omissions giving rise to the claim

occurred'" in this district.  *Id*. (quoting 28 U.S.C. § 1391(b)(2)(emphasis supplied).  Based on the

language of the statute and the relevant events of this case, the Court concludes that venue is

proper in this district.

**V.     Statute of Limitations**

Finally, the individual defendants contend that plaintiff's § 1983 and *Bivens* claims are

barred by the statute of limitations.  Dismissal based on this affirmative defense is appropriate

when the facts giving rise to the defense are clear from the face of the complaint.  *Smith-Haynie*

*v. Dist. of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998); *Johnson v. Ashcroft*, No. 04-1158,

2005 WL 2073752, at *4 (D.D.C. Aug. 17, 2005).  "[B]ecause statute of limitations issues often

depend on contested questions of fact, dismissal is appropriate only if the complaint on its face is

conclusively time-barred."  *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996).

The District of Columbia's three-year statute of limitations applies to plaintiff's claims

under 42 U.S.C. § 1983 or *Bivens*.  *Singletary v. Dist. of Columbia*, 351 F.3d 519, 529 n. 11

(D.C. Cir. 2003); *Smith-Haynie*, 155 F.3d at 577 n. 1; *Bame v. Clark*, 466 F. Supp. 2d 105, 108-

09 (D.D.C. 2006) (discussing *Banks v. Chesapeake & Potomac Tel. Co.*, 802 F.2d 1416, 1428-29 (D.C. Cir. 1986)).[14]   The parties agree that plaintiff's cause of action accrued in December 2000, when the Commission issued its notice of action regarding his reparole.  Plaintiff filed his *pro se* complaint in March 2001.  In that complaint he named as federal defendants the Commission and the following employees of the Commission: Michael J. Gaines, Marie Ragghianti, Edward F. Reilly, Jr., John R. Simpson*, Janie L. Jeffers, Deirdre Jackson, and Otis Thomas.  Given the focus of the § 1983 claim in his complaint, plaintiff arguably was suing these defendants only in their official capacities.  Plaintiff, through counsel, filed an amended complaint on April 3, 2006. The amended complaint names five of the individuals that were sued in the first complaint and four additional Commissioners, and raises the *Bivens* claim against the individual defendants in their personal capacities.[15]

Assuming defendants' argument is correct, that the filing date of the amended complaint is the pertinent one, the case would still not be subject to dismissal.  In determining the state limitations period in a § 1983 or *Bivens* action, the court should consider the state tolling provisions.  *Hardin v. Straub*, 490 U.S. 536, 539 (1989).  Under District of Columbia law, the statute of limitations is tolled when the plaintiff is imprisoned at the time the cause of action accrues.  *Arnold v. Dist. of Columbia*, 211 F. Supp. 2d 144, 147 (D.D.C. 2002); *Simpson v. Dist. of Columbia Metro. Police Dep't*, 789 F.Supp. 5, 6 (D.D.C.1992); *see* D.C. Code § 12-302(a)(cause of action accrues when plaintiff no longer imprisoned).  It is undisputed that

---

[14] The three-year limitations period for *Bivens* claims is subject to an exception for the intentional torts specifically enumerated in D.C. Code 12-301(4).  *See Bame*, 446 F. Supp. 2d at 108.  However, none of those torts have been alleged in this action.

[15] The Court has construed the *Bivens* claim as being only against the Commissioners who participated in plaintiff's reparole decision in 2000.

plaintiff has been incarcerated continuously since before his 2000 reparole hearing.  Therefore,

this case is not barred by the applicable statute of limitations.

## **<u>CONCLUSION</u>**

Based on the foregoing, the Court finds that the § 1983 claim cannot proceed against the

Commission, and that the *Bivens* claim is barred by the immunity of the individual defendants.

The case will proceed against the individually-named defendants in their official capacities for

declaratory and injunctive relief under § 1983.  A separate order accompanies this Memorandum

Opinion.


_____/s/_____
JOHN D. BATES
United States District Judge

Date:   March 26, 2007