## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

<table>
<tr><td>

**THADDEUS FLETCHER,**

    **Plaintiff,**

      **v.**

**UNITED STATES PAROLE
COMMISSION, et al.,**

    **Defendants.**

</td><td>

**Civil Action No. 01-0601 (JDB)**

</td></tr>
</table>

## <u>MEMORANDUM OPINION</u>

Plaintiff Thaddeus Fletcher began this litigation while incarcerated for a parole violation, a term of imprisonment that he contends was imposed pursuant to federal reparole regulations that violate the Ex Post Facto Clause of the U.S. Constitution.  His amended complaint seeks damages and injunctive and declaratory relief against the U.S. Parole Commission and various commissioners in their official and/or individual capacities pursuant to 42 U.S.C. § 1983 and <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971).[1]  Separately, he has sought his release through a habeas petition filed in a related case, <u>Fletcher v. Reilly</u>, Civil Action No. 01-2058 (D.D.C.).  On March 26, 2007, the Court granted defendants' motion to dismiss Fletcher's <u>Bivens</u> claim for damages based on the determination that the individually-sued defendants were protected by absolute immunity or, in the alternative, by qualified immunity.  <u>Fletcher v. District of Columbia</u>, 481 F. Supp. 2d 156, 164-68 (D.D.C.

---

[1]  Nine current and former commissioners are named as defendants, all of whom are sued in their official capacities.  Chairman Reilly and former commissioners Simpson, Gaines, Raaghianti, and Jeffers, who "served as Commissioners at the time of plaintiff's 2000 reparole hearing," are also sued in their individual capacities.  <u>See</u> Am. Compl. ¶ 7.

2007).  In conducting the immunity analysis, the Court limited the <u>Bivens</u> claim to "the application of the Commission's guidelines to [Fletcher] by those Commissioners involved in the decision to deny him reparole," and excluded the aspect of his claim related to "promulgation of the reparole guidelines" because no injury flowed from that act alone.  <u>See id.</u> at 164-65.  Soon thereafter, on May 4, 2007, Fletcher was released from prison on reparole consistent with his presumptive reparole date of April 29, 2007, set by the Commission in 2004.

Defendants now move to dismiss Fletcher's remaining claim for declaratory and injunctive relief for lack of a case or controversy.  In response, Fletcher has conceded that his habeas petition has been rendered moot by his release.  But he contends that his action for declaratory and injunctive relief should be allowed to proceed and he also requests a ruling on his pending motion for summary judgment.  He separately seeks reconsideration of the Court's dismissal of his damages claims, on the ground that the Court improperly limited the scope of his <u>Bivens</u> claims.[2]

## **BACKGROUND**

The factual background of this action is set forth more fully in this Court's most recent decision on this matter, <u>see</u> 481 F. Supp. 2d at 158-60, and in the D.C. Circuit opinions addressing the initial proceedings on the original complaint, <u>see</u> <u>Fletcher v. District of Columbia</u>, 370 F.3d 1223 (D.C. Cir.) ("<u>Fletcher I</u>"), <u>vacated in part</u>, 391 F.3d 250 (D.C. Cir. 2004)

---

[2]  For ease of reference, the memorandum in support of defendants' current motion to dismiss will be cited as "Defs.' Mootness Mem.," and Fletcher's combined opposition and reply in support of his motion for summary judgment will be cited as "Pl.'s Opp."  Fletcher's memorandum in support of his motion for reconsideration will be cited as "Pl.'s Reconsideration Mem.," defendants' response as "Defs.' Opp.," and Fletcher's reply thereto as "Pl.'s Reply."  Some information in Fletcher's reconsideration memorandum is subject to a protective order and thus the memorandum was filed under seal, along with a public redacted version.  None of the sealed information appears in this opinion.

("Fletcher II"); Fletcher v. Reilly, 433 F.3d 867 (D.C. Cir. 2006) ("Fletcher III").   The Court assumes at this stage of the proceedings that the factual allegations of Fletcher's amended complaint are true.  In relevant part, Fletcher alleges that he was on parole following his imprisonment for a 1978 rape conviction in the District of Columbia when, in 1995, he was convicted and sentenced in Maryland for assault with intent to commit murder.  See Am. Compl. ¶ 1.  The District of Columbia Board of Parole then issued a warrant against Fletcher for violation of his parole.  Id.  The warrant was executed upon Fletcher's release from the custody of Maryland in August 1998.  Id.  The D.C. Board revoked Fletcher's parole the following October and imposed a 24-month "set-off" before he could be considered again for parole.  Id.

Under the D.C. Board regulations then in effect, post-incarceration rehabilitative conduct was an important factor in the decision to grant reparole.  Id. ¶ 13; see also Fletcher III, 433 F.3d at 870-71.  During the period of his 24-month set-off, Fletcher engaged in significant rehabilitative conduct, including earning a B.A. in Urban Studies from the University of the District of Columbia, working as a clerk in the "Metro Shop" and a supervisor in the "Fabric Industry," and completing various life-skills and psychological programs.  Am. Compl. ¶ 14.  He received no infractions during this time.  Id.

By the time Fletcher became eligible for reparole consideration, the D.C. Board had been dissolved and responsibility for the release of prisoners incarcerated under D.C. law had been transferred to the U.S. Parole Commission, pursuant to § 11231 of the National Capital Revitalization and Self-Government Improvement Act of 1997, Pub. L. 105-33, 111 Stat. 712. Am. Compl. ¶ 1.  By then, the U.S. Parole Commission, following two rounds of rulemaking in 1998 and 2000, had finalized a regulation, 28 C.F.R. § 2.81, requiring the application of its existing guidelines concerning the reparole of federal prisoners to D.C. prisoners whose parole

was revoked for a non-D.C. Code offense.   Id. ¶¶ 1, 16-19; see also 65 Fed. Reg. 45885, 45887,

45894 (July 26, 2000) (final rule codifying § 2.81); 63 Fed. Reg. 39172, 39183 (July 21, 1998)

(interim final rule codifying precursor provision at former § 2.87).  This regulation states, in

relevant part:

> If the prisoner is not serving a new, parolable D.C. Code sentence, the
> Commission's decision to grant or deny reparole on the parole violation term shall
> be made by reference to the reparole guidelines at § 2.21.  The Commission shall
> establish a presumptive or effective release date pursuant to § 2.12(b), and
> conduct interim hearings pursuant to § 2.14.

28 C.F.R. § 2.81(a).[3]  The rule became effective August 5, 2000, and specified that it applied to

all prisoners and parolees who were "serving sentences under the District of Columbia Code for

felony crimes committed prior to August 5, 2000." Id. at 45885, 45887.[4]

Fletcher alleges that, in contrast to the former D.C. Board reparole regulations, the federal

reparole guidelines, published at 28 C.F.R. § 2.21, consider only the offense and offender

characteristics, excluding rehabilitative progress or positive post-incarceration conduct from the

resulting "salient factor score."  Am. Compl. ¶ 18.  He further alleges that, under the federal

---

[3]  The Court pauses here to observe that the parties have often used the terms
"regulations," "rules," and "guidelines" interchangeably in discussing the reparole regime, a
matter also noted by the court of appeals.  Fletcher III, 433 F.3d at 870.  This arises in large part
because the regulation at issue, 28 C.F.R. § 2.81(a), requires the application of another section,
§ 2.21, that bears the title "reparole consideration guidelines."  As Fletcher's amended complaint
and the text of § 2.81 make clear, however, § 2.81 is not itself a "guideline."  See Am. Compl.
¶ 1 ("Pursuant to [its] authority, the Commission promulgated a regulation in which it applied to
D.C. prisoners its existing guidelines for the reparole of federal prisoners.  See 28 C.F.R. §
2.81."); 28 C.F.R. § 2.81(a) ("If the prisoner is not serving a new, parolable D.C. Code sentence,
the Commission's decision to grant or deny reparole shall be made by reference to the reparole
guidelines at § 2.21.");  65 Fed. Reg. at 45885 (stating in preamble to § 2.81 that "[t]he U.S.
Parole Commission is issuing final rules for parole-eligible D.C. Code prisoners and parolees.").

[4]  For a further description of the rulemaking proceedings, see Fletcher III, 433 F.3d at
870-73.

reparole guidelines, the U.S. Parole Commission sets a presumptive release date at the first reparole hearing, which is "virtually impossible" to change at subsequent interim hearings.  Id. ¶ 19.

A reparole hearing was held in November 2000.  See Fletcher III, 433 F.3d at 873 (incorporated by reference into Am. Compl. ¶ 2).  The following December the members of the U.S. Parole Commission considered and denied Fletcher reparole, and set a presumptive reparole date of October 29, 2010.  Am Compl. ¶ 1.  In doing so, the members of the Commission applied the federal reparole guidelines, as required by § 2.81(a), and thus developed a salient factor score and offense severity category which did not take into account Fletcher's post-incarceration rehabilitative conduct.  Id. ¶ 21.

On August 14, 2002, the U.S. Parole Commission acknowledged an error in its salient factor score and set a new presumptive release date of October 2007, with the next review hearing set for July 2004.  See Fletcher III, 433 F.3d at 874.  As a result of the 2004 review hearing, Fletcher's presumptive reparole date was moved up by six months, to April 29, 2007. See Def.'s Mootness Mem., Exhibit P.  Consistent therewith, Fletcher was released on reparole on May 4, 2007.  Id. Exhibit EE; see also Pl.'s Opp. at 7-8 (acknowledging Fletcher's release).

Fletcher alleges that "[t]he retroactive application of the federal reparole regulation adversely affect[ed] both [his] eligibility and his suitability for reparole, creating a significant risk that he [was] detained in prison longer than he would have under the regulations and practice of the D.C. Board at the time his offense was committed."  Am. Compl. ¶ 22.  He further alleges that the Commission and its members "directed, authorized and approved the reparole procedures used in [his] case," and that the "procedures are unconstitutional, on their face and as applied to him."  Id. ¶ 23.

Relying on these factual allegations, Fletcher styles his claim for relief as based on "[t]he unlawful retroactive application of the federal reparole regulations by the United States Parole Commission and its members" to him and also "defendants' policy and practice of retroactively applying federal reparole regulations to plaintiff, instead of the D.C. Board reparole regulations in effect at the time of plaintiff's original offense . . . ."  Am. Compl. ¶¶ 25, 26.  He alleges that the foregoing "policies, practices, customs, acts and omissions" have caused him to face a significant risk of increased punishment, and to be detained in prison longer than he would have been had the D.C. Board regulations been applied to his reparole eligibility and suitability determinations.  Id. ¶ 27.

In response to the amended complaint, defendants moved to dismiss all of the claims, raising lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief can be granted based on absolute and qualified immunity and the statute of limitations.  On March 26, 2007, the Court issued a memorandum opinion and order finding that the exercise of personal jurisdiction and venue in this district was appropriate and that the claims were timely filed.  Fletcher, 481 F. Supp. 2d at 168-72.  The Court held that the claim for declaratory and injunctive relief under Section 1983 could proceed against the Commissioners sued in their official capacities, but dismissed the Commission itself based on sovereign immunity.  Id. at 160-64.

As to the merits of the Bivens claim for damages, the Court held that "plaintiff's Bivens claim will be evaluated on the basis of the application of the Commission's guidelines to him by those Commissioners involved in the decision to deny him reparole," but that the allegations relating to the promulgation of the reparole regulation and the Commissioners' failure to promulgate a regulation in line with the prior D.C. Board regulation would be excluded.  481

6

F. Supp. 2d at 164-65.  The Court reasoned that <u>Bivens</u> and its progeny require a plaintiff to

"demonstrate an injury consequent upon the violation" of his constitutional rights by federal

employees.  <u>Id.</u> at 164.  Applying that standard, the Court determined that:

> [P]laintiff's claims regarding the promulgation of the reparole guidelines must be
> dismissed because plaintiff cannot demonstrate that he has suffered a concrete
> injury or harm by the mere enactment of the guidelines. . . . The Court rejects
> plaintiff's inventive argument that his cause of action is neither the promulgation
> nor the application of the regulation, but rather something in between – the failure
> over time to promulgate and follow a proper regulation in line with the prior D.C.
> Board policy.  Plainly, plaintiff's actionable injury arises from the application of
> the federal guideline to his case in 2000, not from some abstract continuing
> failure.

<u>Id.</u>  The Court then held that the Commissioners are protected from suit by absolute immunity

because the reparole decision was quasi-judicial in nature and thus, like judges and other officials

performing judicial functions, the Commissioners were immune from a <u>Bivens</u> action for

damages.  <u>Id.</u> at 165-66.  The Court proceeded to consider whether qualified immunity also

would bar the <u>Bivens</u> claim -- that is, whether "[the official's] conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known."

<u>See id.</u> at 166 (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)).  In conducting the

qualified immunity analysis, the Court assumed that the facts alleged by Fletcher would establish

a violation of the Ex Post Facto Clause, and focused its inquiry on whether, under "clearly

established" law, the Commissioners were on notice that determination of Fletcher's reparole

eligibility date on the basis of post-offense reparole regulations and guidelines would violate the

Ex Post Facto Clause.  481 F. Supp. 2d at 166-68.  Finding that the law was not clearly

established on this issue at the time his reparole was denied in 2000, the Court held that qualified

immunity applied.  <u>Id.</u>

Fletcher now seeks reconsideration of the dismissal of his <u>Bivens</u> claims.  He also has

moved for summary judgment on the merits of his claim that defendants acted in violation of the Ex Post Facto Clause.  For their part, defendants have moved to dismiss the remaining claim for declaratory and injunctive relief on the ground that Fletcher's release on May 4, 2007 has rendered the case moot.

## STANDARD OF REVIEW

The pending motions require the Court to consider whether it properly dismissed the Bivens damages claim under Rule 12(b)(6) and also whether dismissal of the remaining claim for declaratory and injunctive relief is required under Rule 12(b)(1) because of mootness, a matter of subject matter jurisdiction.[5]  "[I]n passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see Leatherman v. Tarrant Cty. Narcotics and Coordination Unit, 507 U.S. 163, 164 (1993); Phillips v. Bureau of Prisons, 591 F.2d 966, 968 (D.C. Cir. 1979).  A plaintiff's factual allegations must be presumed true, and plaintiff also must be given every favorable inference that may be drawn from the allegations of fact.  Scheuer, 416 U.S. at  236; Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000).  However, a court need not accept as true "a legal conclusion couched as a factual allegation," nor inferences that are unsupported by the facts set out in the complaint.  Trudeau v. Federal Trade Comm'n, 456 F.3d

---

[5]  Defendants label their motion to dismiss for mootness as a Rule 12(b)(6) motion or, in the alternative, as a motion for summary judgment.  As a procedural matter, jurisdictional issues cannot be resolved under Rule 12(b)(6) or summary judgment, which represent merits decisions, and instead must be considered under Rule 12(b)(1).  See Kirkham v. Societe Air France, 429 F.3d 288, 291 (D.C. Cir. 2005); see also Rochon v. Gonzales, 438 F.3d 1211, 1214 (D.C. Cir. 2006) (distinguishing jurisdictional resolution under Rule 12(b)(1) from a Rule 12(b)(6) dismissal of a plaintiff's claims on the merits).

178, 193 (D.C. Cir. 2006) (quoting <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)).

With respect to Rule 12(b)(6), the Supreme Court has further explained that "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. ___, 127 S. Ct. 1955, 1965 (2007) (citations omitted). However, a court "must not make any judgment about the probability of the plaintiff's success, for a complaint 'may proceed even if it appears that a recovery is very remote and unlikely'" or "that the plaintiff 'will fail to find evidentiary support for his allegations.'" <u>Aktieselskabet AF 21. November 2001 v. Fame Jeans, Inc.</u>, --- F.3d ---, slip op. at 14 (D.C. Cir. Apr. 29, 2008) (quoting <u>Bell Atl. Corp.</u>, 127 S. Ct. at 1965, 1969 n.8).

Under Rule 12(b)(1), the party seeking to invoke the jurisdiction of a federal court -- here, the plaintiff -- bears the burden of establishing that the court has jurisdiction. <u>See US Ecology, Inc. v. U.S. Dep't of Interior</u>, 231 F.3d 20, 24 (D.C. Cir. 2000) (citing <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 103-04 (1998)); <u>see also</u> <u>Grand Lodge of Fraternal Order of Police v. Ashcroft</u>, 185 F. Supp. 2d 9, 13 (D.D.C. 2001) (a court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority"). A court may consider material other than the allegations of the complaint in determining whether it has jurisdiction to hear the case, so long as it still accepts the factual allegations in the complaint as true. <u>See Jerome Stevens Pharm., Inc. v. FDA</u>, 402 F.3d 1249, 1253-54 (D.C. Cir. 2005); <u>EEOC v. St. Francis Xavier Parochial Sch.</u>, 117 F.3d 621, 624-25 n.3 (D.C. Cir. 1997); <u>Herbert v. Nat'l Acad. of Scis.</u>, 974 F.2d 192, 197 (D.C. Cir.1992).

**DISCUSSION**

I.      **Fletcher's Motion for Reconsideration**

Fletcher seeks reconsideration of the dismissal of his <u>Bivens</u> claim on three grounds:

(1) the Court improperly limited his <u>Bivens</u> claim to the November 2000 application of the

federal reparole regulations to him, excluding other "links in the administrative causal chain";

(2) absolute immunity does not shield the individually-sued commissioners from this broader

<u>Bivens</u> claim; and (3) qualified immunity also does not shield these defendants from <u>Bivens</u>

liability because, given the information available to the Commissioners, they reasonably were on

notice that the federal reparole policies and practices violate the Ex Post Facto Clause under

"clearly established law" as set forth in <u>Garner v. Jones</u>, 529 U.S. 244 (2000), and this Circuit's

prior <u>Fletcher</u> decisions.  <u>See</u> Pl.'s Reconsideration Mem. at 4-11, 14-18, 20-35.  For the reasons

explained below, the Court now construes Fletcher's <u>Bivens</u> claim as resting more broadly on,

collectively, the promulgation of the federal reparole regulation at 28 C.F.R. § 2.81, the

application of that regulation and the federal reparole guidelines to Fletcher, and the absence of

any subsequent change to the regulation.  However, the claim must nonetheless be dismissed

because even the broader claim is barred by absolute immunity.

A.      **The Scope of the <u>Bivens</u> Claim**

Fletcher now contends that "the crux of [the <u>Bivens</u>] claim is the individual defendants'

administrative policy decision to make their harsher reparole rules retroactively applicable to all

D.C. Code offenders including Mr. Fletcher," and further contends that he "does not challenge the

manner in which the individual defendants applied the Commission's new reparole policy to his

case; he challenges the decision to apply the new reparole policy to him at all."  <u>See</u> Pl.'s

Reconsideration Mem. at 3.  He then characterizes the claim as based on a "seamless chain of

causal events" focusing on two events preceding the application of the reparole guidelines to him in November 2000: first, when the individual defendants "personally made or approved an administrative policy decision to make the Commission's new harsher reparole regulations retroactively applicable to all D.C. Code offenders, including Mr. Fletcher" through "regulations [that] became effective in August 2000"; and second, in October 2000, "when as a direct result of the Commission's new reparole policy and practice, Mr. Fletcher was not released after he reached the end of the 24-month Board-imposed set-off period." See Pl.'s Reconsideration Mem. at 5, 8-11.   The Court's focus on the <u>application</u> of the Commission's reparole regulations to Fletcher, he contends, was not a fair reading of the complaint, nor consistent with the law.  <u>Id.</u> at 4-5.

After a studied review of the amended complaint, drawing all inferences in Fletcher's favor, the Court concludes that the amended complaint pleads a <u>Bivens</u> action based, not on one event, but a series of events:  the promulgation of the reparole regulation effective August 5, 2000 (<u>i.e.</u>, 28 C.F.R. § 2.81), the application of that regulation and the federal reparole guidelines to Fletcher, and the subsequent failure to change the regulation.  This is not quite the same as the post-pleading spin that Fletcher puts on his amended complaint, for he denies altogether that he intends to challenge how the Commission "applied" the federal reparole regulations to his individual case.  But his denial is belied by the plain language of the amended complaint, which states in the description of the parties that defendants unlawfully "applied" the reparole regulation and guidelines to him (Am. Compl. ¶¶ 10-11), and then, in his claim for relief, repeatedly states his challenge to this "application":

25.   The unlawful retroactive <u>application</u> of the federal reparole regulations by the [Commission] and its members has . . . deprived plaintiff of the rights, privileges and immunities guaranteed by the Constitution of the United States.

26.   As alleged above, defendants' policy and practice of retroactively <u>applying</u> federal

reparole regulations <u>to plaintiff</u>, instead of the D.C. Board reparole regulations . . . violates the Ex Post Facto Clause of the Constitution.

27.    As a proximate cause of defendants' policies, practices, customs, acts and omissions, plaintiff has suffered and in the absence of relief will continue to suffer, immediate and irreparable injury.

    a.    In particular, <u>as a result of the retroactive application of the federal reparole regulations to plaintiff</u>, plaintiff has faced a significant risk of increased punishment.

<u>See</u> Am. Compl. ¶¶ 25-27 (emphasis added).

Nonetheless, the Court has concluded that its March 2007 decision did not give sufficient weight to Fletcher's allegations that the Commissioners were liable because they promulgated the federal reparole regulation at issue, 28 C.F.R. § 2.81, and thus authorized the alleged constitutional violations.  These allegations state, in relevant part:

7.    . . . As current and former Commissioners [defendants] possess(ed) and exercise(d) final rulemaking and individual case decision-making authority relating to all parole resulting from convictions under the District of Columbia Code.

    . . .

9.    Defendants [names omitted] promulgated, formulated, directed, authorized and approved for use the regulations and procedures that govern reparole for persons whose parole is revoked based on an offense committed outside of the District of Columbia.

10.    These regulations have been codified at 28 C.F.R. § 2.81(a).  These regulations, both on their face and as applied by defendant, have violated plaintiff's rights under the Ex Post Facto Clause of the U.S. Constitution in the manner described throughout this complaint by creating a significant risk of increased punishment.

    . . .

23.    The defendants, the United States Parole Commission and the individual members . . . , have directed, authorized and approved the reparole procedures used in plaintiff's case.  Plaintiff alleges that these procedures are unconstitutional, on their face and as applied to him.

Am. Compl. ¶¶ 7, 9, 10, 23.

Far less apparent from the amended complaint is Fletcher's contention that he mounts a challenge to the Commission's failure to release him as soon as the 24-month set-off period expired or, on a continuing basis, thereafter.  At best, drawing all inferences in Fletcher's favor, the Court finds that the vague and cursory reference to defendants' "omissions" in paragraph 27, combined with the allegations concerning his continued detention based on an allegedly unlawful regulation, encompass a claim that the Commissioners' also violated the Ex Post Facto Clause by failing subsequently to change the regulation back to one consistent with the former D.C. Board regulations.  See Am. Compl. ¶ 27 ("As a proximate cause of defendants' policies, practices, customs, acts and omissions, plaintiff has suffered and in the absence of relief will continue to suffer, immediate and irreparable injury.") (emphasis added).

With that broader construction of the claim established, the Court will reexamine its previous determination that the promulgation of the federal reparole regulation must be excluded from the Bivens claim because no injury flowed from the enactment alone.  See 481 F. Supp. 2d at 164. The Court concludes that this determination was in error.  The case law on supervisory liability recognizes that liability may be based on an official's direct involvement in a plan or policy that expressly or impliedly authorizes a constitutional violation.

This Circuit has explained that supervisory liability exists under Bivens and Section 1983 where there is an "affirmative link between the occurrence of . . . various incidents of . . . misconduct and the adoption of any plan or policy by [officials] -- express or otherwise -- showing their authorization or approval of such misconduct." Haynesworth v. Miller, 820 F.2d 1245, 1260 (D.C. Cir. 1987) (quoting Rizzo v. Goode, 423 U.S. 362, 376 (1976)).  Judge (now Chief Justice) Roberts later cautioned that there cannot be "liability for general inaction," which would run the risk of subjecting officials to impermissible respondeat superior liability, but

reiterated the viability of supervisory liability where the officials "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." See Int'l Action Ctr. v. United States, 365 F.3d 20, 28 (D.C. Cir. 2004) (quoting Jones v. City of Chicago, 856 F.2d 985, 992 (7th Cir. 1988)); Barham v. Ramsey, 434 F.3d 565, 578 (D.C. Cir. 2006) (same). See also Dalrymple v. Reno, 334 F.3d 991, 995-96 (11th Cir. 2003) (explaining that Bivens liability may attach to supervisors "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so, or when the supervisor's improper custom or policy . . . resulted in deliberate indifference to constitutional rights") (internal quotation marks and citations omitted); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997) ("[a] supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them").

Although the supervisory liability cases are not directly applicable -- nothing in the complaint casts the individually-sued Commissioners as unlawfully supervising another person -- this line of cases supports the general principle that an earlier link in the causal chain of events (that is, authorization or approval of an unconstitutional act) may provide the basis for liability under Bivens.[6]  Fletcher's claim fairly falls within that paradigm.  Fletcher alleges that the

---

[6]  Fletcher also relies on the line of cases addressing municipal liability for unconstitutional customs and practices to support his Bivens claim.  See Pl.'s Reconsideration Mem. at 5-7; Pl.'s Reply at 7-9.  The Court does not, however, rely on those cases because this Circuit has declined to equate municipal and supervisory liability, cautioning that "whether a governmental entity should be charged with responsibility for the acts of its employees is conceptually distinct from the question whether the wrongs of one . . . worker should be imputed to another."  Haynesworth, 820 F.2d at 1262; see also Int'l Action Ctr., 365 F.3d at 26 n.1 (distinguishing municipal liability for a "policy" or "custom" from supervisory liability based on an official's "affirmative link" to challenged conduct or "direct responsibility")

individually-sued Commissioners authorized and approved the alleged Ex Post Facto Clause violations by promulgating 28 C.F.R. § 2.81 (requiring application of the federal reparole guidelines to D.C. offenders reincarcerated for a non-D.C. Code offense), and later by failing to cure the violations caused by the federal regulation, instead turning a "blind eye" to the alleged violations.  In the end, however, this expanded interpretation of Fletcher's Bivens claim does not enable the claim to go forward, for the law is equally clear in this Circuit that federal officials are protected by absolute immunity for the promulgation of regulations and any accompanying failure to modify regulations.

**B.    Absolute Immunity**

Fletcher does not contest the Court's holding that quasi-judicial absolute immunity shields members of a parole board from suit when they adjudicate a specific case.  See Pl.'s Reconsideration Mem. at 16 n.11.  Thus, the part of Fletcher's Bivens claim resting on a challenge to the application of the regulations to his individual case -- that is, the reparole hearing and the denial of reparole in November and December 2000 -- is barred by absolute immunity. See 481 F. Supp. 2d at 165-66.  Instead, he contends that reconsideration is required because "[w]hen [his] claims are properly construed as encompassing the administrative policy decision that initiated the causal chain of events at issue, it becomes clear that the individual defendants' absolute immunity arguments are untenable."  Pl.'s Reconsideration Mem. at 11.  Defendants respond that, to the extent Fletcher's claim is based on the promulgation of an allegedly unconstitutional regulation, they are shielded from suit by absolute immunity because that act is a quasi-legislative function.  See Defs.' Opp. at 5.  The Court agrees.

This Circuit has expressly held that absolute immunity shields agency officials from a Bivens action that is based on the promulgation of unconstitutional regulations.  See Jayvee

Brand, Inc. v. United States, 721 F.2d 385, 394-95 (D.C. Cir. 1983).  The rationale for such absolute immunity is that "[l]egislation is a function entitled to absolute immunity, . . . with the immunity following the function and not the office," and "regulations are an exercise of quasi-legislative administrative authority."  Id. at 395 (citing Supreme Court of Virginia v. Consumers Union, 446 U.S. 719, 733-34 (1980), and Lake Country Estates, Inc. v. Tahoe Regional Planning Agency, 440 U.S. 391, 405 & n.30 (1979)).  Hence, "when an agency exercises quasi-legislative regulatory authority, [an] action for money damages against agency members will not lie."  Id.; accord Redwood Village Partnership v. Graham, 26 F.3d 839, 841 (8th Cir. 1994) (agreeing with Jayzee Brand rationale, and holding that "Department officials who promulgated the amended rules . . . are absolutely immune from suit for damages").

Fletcher repeatedly calls the promulgation of the reparole regulation at issue, 28 C.F.R. § 2.81, "administrative," and cites cases denying absolute immunity for such "administrative" acts.  See Pl.'s Reconsideration Mem. at 4-11, 15-17; Pl.'s Reply at 11-12.  Indeed, the Fifth Circuit has labeled the promulgation of regulations an "administrative" function, and denied absolute immunity on that basis.  See Walter v. Torres, 917 F.2d 1379, 1380 (5th Cir. 1990) ("Relying on the distinction between administrative and adjudicative functions for immunity purposes drawn in Farrish v. Mississippi State Parole Bd., 836 F.2d 969 (5th Cir. 1988), we hold that parole board members have . . . only qualified immunity when enacting rules pursuant to their rule making authority granted by the state legislature.").  However, the Fifth Circuit is in direct conflict with this Circuit on that issue, and it is Jayvee Brands that must be followed in this Circuit.  Furthermore, as the Second Circuit has observed, the Fifth Circuit's reasoning is unpersuasive because "[t]he characterization of rulemaking as 'administrative' does not assist us

in analyzing the immunity question under a functional approach."  <u>Redwood Village Partnership</u>,
26 F.3d at 841.

Portions of Fletcher's brief suggest that absolute immunity should not be available where
there is a "continuing" failure to modify the regulation after its implementation.  <u>See</u> Pl.'s
Reconsideration Mem. at 31 (contending, in the context of qualified immunity, that the Court
failed to consider the individual defendants' "continuing refusal to reconsider their initial,
unconstitutional administrative policy decision to make their new harsher reparole regulations
retroactively applicable").  Assuming that the amended complaint encompasses a claim of such a
continuing failure to modify the regulation (<u>see</u> <u>supra</u> at 12-13), it remains barred by absolute
immunity.  The case law recognizes that quasi-legislative immunity extends to claims alleging a
failure to promulgate new rules that would rectify an alleged constitutional violation.  <u>See</u>
<u>Dobrich v. Walls</u>, 380 F. Supp. 2d 366, 378 (D. Del. 2005) ("any inaction by the individual . . .
[d]efendants is shielded by absolute immunity, because their inaction is connected with the
exercise of their legislative responsibilities . . . and thus, within the purview of legislative
immunity"); <u>Terry v. Bobb</u>, 827 F. Supp. 366, 368 (E.D. Va. 1993) (holding that "absolute
legislative immunity" shielded city council members from plaintiff's claim that they "failed to
enact legislation to address the conditions at the jail" in violation of the Fifth, Eighth, and
Fourteenth Amendments).  This is an unassailable common-sense proposition, for otherwise any
plaintiff could circumvent the protection offered by legislative or quasi-legislative immunity
simply by alleging that, the day after the regulation was promulgated, the official violated the
plaintiff's constitutional rights by failing to promulgate a rule curing the alleged violative
regulation.

Fletcher attempts to avoid the consequences of absolute immunity by claiming in his

reply brief that the "suit has nothing to do with the individual defendants' substantive rulemaking decisions" but instead challenges "the individual defendants' administrative practice of retroactively applying the Commission's . . . reparole rules to him and all D.C. parolees, a practice which is not sanctioned in any written rule or regulation." See Pl.'s Reply at 11 (emphasis added).  This is a disingenuous characterization of the amended complaint, which asserts comprehensive allegations concerning the defendants' "final rulemaking . . . authority" and the circumstances surrounding the promulgation of 28 C.F.R. § 2.81, and ultimately contends that the regulations are "unconstitutional, on their face and as applied to plaintiff."  Am. Compl. ¶¶ 7, 9-10, 16-19, 23.  Thus, although the terms "policy" and "practice" occasionally appear in the amended complaint alongside Fletcher's reference to the reparole regulation (¶¶ 26-28), the amended complaint plainly reveals that this suit has everything to do with the substantive rulemaking decision.

In any event, Fletcher cannot circumvent absolute immunity by recharacterizing his claim as a challenge to a "policy" or "practice" of allowing the regulation to be applied generally because that is no different than challenging the "enactment (signing into law) of [an] ordinance" -- or here, a regulation.  See Daly v. Harris, 215 F. Supp. 2d 1098, 1126-27 (D. Haw. 2002) (rejecting plaintiff's claim that "legislative immunity does not extend to the post-enactment activities complained of . . . (the implementation of the ordinance)" where essence of claim remained "enactment (signing into law) of the ordinance," in contrast to unfairly "singling out . . . specific individuals"), aff'd, 117 Fed. Appx. 498 (9th Cir. 2004).  In other words, Fletcher's restyled challenge to the "practice of retroactively applying" the federal reparole guidelines to the class covered by § 2.81(a) -- D.C. prisoners whose parole is revoked for a non-D.C. Code offense -- is nothing more than a challenge to the very requirement established by the regulation.  See 28

C.F.R. § 2.81(a) ("If the prisoner is not serving a new, parolable D.C. Code sentence, the

Commission's decision to grant or deny reparole on the parole violation term shall be made by

reference to the reparole guidelines at § 2.21.").

      The only issue that remains, then, is whether the Court may properly rule on the defense

of absolute immunity before the amended complaint has been answered.  See Pl.'s

Reconsideration Mem. at 14-15.  As Fletcher reluctantly recognizes, "an affirmative defense may

be raised by a pre-answer motion under Rule 12(b) when the facts that give rise to the defense are

clear from the face of the complaint."  See Smith-Haynie v. District of Columbia, 155 F.3d 575,

578 (D.C. Cir. 1998); see also McKenna v. Wright, 386 F.3d 432, 435-436 (2d Cir. 2004) ("we

see no reason why even a traditional . . .  immunity defense may not be asserted on a Rule

12(b)(6) motion as long as the defense is based on the facts appearing on the face of the

complaint").  Here, the Court has concluded that the defense of absolute immunity can be

resolved before the filing of the answer because it is "clear from the face of the complaint."  See

Smith-Haynie, 155 F.3d at 578.  The suggestion that defendants did not pursue an absolute

immunity defense is wholly unsupported by the record.  Defendants raised the defense of quasi-

judicial absolute immunity in their motion to dismiss, and raised quasi-legislative absolute

immunity when Fletcher asked the Court to reinstate his Bivens claim based on the

Commissioners' "administrative policy decision" to follow the new reparole regulation for all

D.C. Code offenders.[7]  Thus, resolution of absolute immunity before the filing of an answer is

---

[7]  Ideally, defendants would have raised the issue of quasi-legislative absolute immunity earlier in their motion to dismiss.  But as the Court noted above, Fletcher's present characterization of his claim is not readily apparent from the face of the amended complaint, which focuses much more on the unlawful application of the regulations in his individual case. Moreover, in response to Fletcher's more pointed characterization of his claim, defendants squarely raised the defense of quasi-legislative absolute immunity, and Fletcher responded on the merits.  See Pl.'s Reply at 11-12.

supported by both this Circuit's precedent and the record in this case.

### C.    Qualified Immunity

Fletcher also asks the Court to reconsider its conclusion that qualified immunity shields defendants from <u>Bivens</u> liability on the ground that <u>Garner v. Jones</u>, 529 U.S. 244 (2000), and this Circuit's prior <u>Fletcher</u> decisions constitute "clearly established" law that would put a reasonable person on notice that the federal reparole policies and practices at issue violate the Ex Post Facto Clause.  He further contends that he should have been permitted "an opportunity to present evidence demonstrating as factually untenable any assertion by the individual defendants that they were reasonably unaware of the impact of their actions," initially submitting six exhibits as to what defendants should reasonably be charged with knowing.   Pl.'s Reconsideration Mem. at 27-28 & Exs. B-G.  He also has submitted a motion for summary judgment, with 40 supporting evidentiary exhibits, that bear on whether defendants should have known that the federal reparole regulations created a significant risk of increasing his punishment, when compared with the D.C. Board regulations.  <u>See</u> Pl.'s Mot. for Summ. J. (filed Apr. 5, 2007). Defendants have not responded to Fletcher's evidentiary proffer, maintaining instead that the Court should not reconsider its decision on qualified immunity because there is no settled case law on whether the federal reparole regulations are unconstitutional.  <u>See</u> Defs.' Opp. at 4 & n.2.

The Court recognized in its analysis of the qualified immunity defense that "the 'relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'"  481 F. Supp. 2d at 166 (quoting <u>Saucier v. Katz</u>, 533 U.S. 194, 202 (2001)).  Although the Court believes its observations on the law governing qualified immunity remain correct, it was, in hindsight, premature to resolve the issue.  It cannot be ignored that the evidence now produced

by Fletcher bears on the "situation that [defendants] confronted," as contemplated in <u>Saucier</u>, and hence impacts the assessment whether a reasonable officer should have known that the federal reparole regulations, under the <u>Garner</u> standard, created "a significant risk of increasing the punishment" for the covered crimes. <u>Garner</u>, 528 U.S. at 250.  The absence of a Supreme Court or circuit decision is not, as defendants suggest, by itself dispositive of qualified immunity.  <u>See Hope v. Pelzer</u>, 536 U.S. 730, 739 (2002).  However, having already concluded that defendants are shielded from <u>Bivens</u> liability by absolute immunity, the Court has no occasion to resolve the question whether, in light of this more fulsome record, defendants remain entitled to qualified immunity.  For reasons of judicial economy, then, the Court will rest its decision on absolute immunity alone, and will vacate its decision on qualified immunity.

## II.    Defendants' Motion to Dismiss the Claim for Declaratory and Injunctive Relief

The remaining claim is Fletcher's request for declaratory and injunctive relief -- that is, that the Commissioners violated the Ex Post Facto Clause by implementing regulations, or as he prefers to call it, a "policy" or "practice," that failed to consider "rehabilitative progress or potential or other post-incarceration factors in the same manner as did the former D.C. Board of Parole, in determining [his] eligibility and suitability for reparole." Am. Compl. ¶¶ 28-29.  Defendants move to dismiss this claim on the ground that Fletcher's release on May 4, 2007 has rendered it moot.

A case is considered moot either "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  <u>Powell v. McCormack</u>, 395 U.S. 486, 496 (1969); <u>see also</u> <u>Pharmachemie B.V. v. Barr Labs.</u>, 276 F.3d 627, 631 (D.C. Cir. 2002) (a case is moot if "events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future").  "[A]n

actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." Preiser v. Newkirk, 422 U.S. 395, 401 (1975), quoted in Columbian Rope Co. v. West, 142 F.3d 1313, 1316 (D.C. Cir. 1998); see also Coalition of Airline Pilots Ass'ns v. FAA, 370 F.3d 1184, 1189 (D.C. Cir. 2004). As the Supreme Court has put it, "mootness, however it may have come about, deprives us of the power to act; there is nothing for us to remedy, even if we were disposed to do so." Spencer v. Kemna, 523 U.S. 1, 18 (1998).

Fletcher "reluctantly agrees" that, under Spencer v. Kemna, his related case seeking a writ of habeas corpus (Civil Action 01-2058) is moot because his objective in that case "to secure release on reparole" has been obtained. See Pl.'s Opp. at 8. Indeed, that conclusion is inescapable under Spencer. The Supreme Court held there that where a petitioner sought habeas relief for the wrongful termination of parole but was released during the pendency of his appeal, the case was moot because "[t]he reincarceration that [petitioner] incurred as a result of that [challenged] action is now over, and cannot be undone," and thus the suit could not be maintained unless there were continuing "collateral consequences" from the challenged action. 523 U.S. at 8. The Supreme Court found no such collateral consequences, and rejected the proposition that the suit could be maintained because it fell within the exception for cases "capable of repetition yet evading review," observing that "the time between parole revocation and expiration of sentence" is not so short as to evade review. Id. at 17-18. Hence, this Court, by separate order dated March 26, 2007, dismissed the habeas action as moot. See Fletcher v. Reilly, No. 01-2058, Order at 1 (D.D.C. Mar. 26, 2007).

Fletcher nonetheless disagrees that his request for injunctive and declaratory relief in this action is moot. This Circuit has clearly held, based on the same rationale as in Spencer v. Kemna, that such additional relief is precluded by the mootness doctrine. "[W]hen a prisoner

seeking injunctive or declaratory relief challenges his parole eligibility date but is subsequently released on parole, his claims are moot unless he alleges continuing adverse consequences from the challenged parole records." Anyanwutaku v. Moore, 151 F.3d 1053, 1057 (D.C. Cir. 1998) (citing Spencer v. Kemna, 523 U.S. at 7-8); accord Abdussamadi v. Harris, No. 02-5076, 2003 WL 880993, at *1 (D.C. Cir. Feb. 25, 2003) (same).   As the Ninth Circuit observed in similar circumstances, where a petitioner challenges his reincarceration after parole, but is then released, "[his] release extinguishes his legal interest in an injunction because it would have no effect on him," and a "claim for declaratory judgment also cannot proceed" because "[a] judicial pronouncement, as it would relate to [petitioner], would be an advisory opinion, which the Constitution prohibits."   McQuillon v. Schwarzenegger, 369 F.3d 1091, 1095 (9th Cir. 2003). The principles articulated in Anyanwutaku and McQuillon squarely apply to this case.  The requested injunction would no longer have any effect upon Fletcher, nor would a declaratory judgment.  Furthermore, Fletcher has alleged no continuing "collateral consequences" in response to defendants' motion.

Fletcher attempts to keep his remaining claims alive based on the exception for claims that are "capable of repetition yet evading review."[8]  See Pl.'s Opp. at 8-10.  This exception applies only in "exceptional situations" where two circumstances are present: "(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration; and (2)

---

[8]  Fletcher mentions in a footnote that the exception for "voluntary cessation" may have application here because the Commission "conveniently released Mr. Fletcher earlier than it might have absent the present litigation . . . to avoid a ruling." Pl.'s Opp. at 9 n.4.   The record flatly contradicts that suggestion.  The record shows that the reparole date of April 29, 2007 (later delayed by five days to May 4, 2007), was set by the U.S. Parole Commission in June 2004 -- that is, after this case was originally dismissed by this Court and long before the D.C. Circuit decision remanding it for further proceedings.

there [is] a reasonable expectation that the same complaining party [will] be subject to the same action." Spencer, 523 U.S. at 17 (internal quotation marks and citations omitted). Fletcher argues that this exception applies here because of "the relatively short duration of post-revocation periods of reincarceration that would preclude full litigation to the Supreme Court before expiration" and the systemic nature of the alleged violation. See Pl.'s Opp. at 8-9. But as noted above, the Supreme Court has already rejected the proposition that challenges to reincarceration after parole revocation are excepted from mootness because they sometimes evade review. See Spencer, 523 U.S. at 18 ("[Petitioner] has not shown (and we doubt that he could) that the time between parole revocation and expiration of sentence is always so short as to evade review."). Indeed, courts routinely have rejected application of this exception in cases involving challenges to parole procedures or errors where the plaintiff has been released during the course of litigation. See Weinstein v. Bradford, 423 U.S. 147, 149 (1975); Flittie v. Erickson, 724 F.2d 80, 82 (8th Cir. 1983); Fendler v. U.S. Bureau of Prisons, 846 F.2d 550, 555 (9th Cir. 1988); but see Sultenfuss v. Snow, 35 F.3d 1494, 1498 n.5 (11th Cir. 1994) (concluding in a footnote, without explanation, that petitioner's challenge to parole procedures was not moot despite his release).

Fletcher also contends that equity weighs in favor of reaching the merits of his claim because defendants' litigation tactics allegedly have delayed the progress of this case. See Pl.'s Opp. at 3-7. Assuming arguendo this is true -- even though the Court's review of the record indicates it is not -- such delay is irrelevant. The Supreme Court found similar claims of "dilatory tactics" irrelevant in Spencer, concluding that "mootness, however it may have come about, simply deprives us of our power to act; there is nothing for us to remedy, even if we were disposed to do so." 523 U.S. at 18.

Finally, even if Fletcher could prevail on his contention that his claim for declaratory and

24

injunctive relief falls within an exception to the mootness doctrine, dismissal is required for the separate and independent reason that he now lacks standing to pursue such relief.  To pursue a claim for prospective injunctive relief, a plaintiff must have standing based on an "injury or threat of injury" that is "both real and immediate, not conjectural or hypothetical."  City of Los Angeles v. Lyons, 461 U.S. 95, 101-02 (1983) (internal quotation marks and citations omitted). Past exposure to illegal conduct will not suffice to support standing to pursue future injunctive relief.  Id. (citing O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974)).  "[S]tanding to seek the injunction requested depend[s] on whether he [is] likely to suffer future injury" from the challenged action.  Id. at 105 (emphasis added).  Here, Fletcher does not contend -- nor could he -- that he faces future imminent injury from continued implementation of the regulations based on the possibility that he might be subject to them again.  This kind of possibility has been held too speculative to support standing, for it is "to be assumed that [plaintiffs] will conduct their activities within the law and so avoid prosecution and conviction as well as exposure to the challenged course of conduct."  Lyons, 461 U.S. at 103; see also Phifer v. Clark, 115 F.3d 496, 500 (7th Cir. 1997) ("Any adverse consequence dependent on [petitioner's] commission of a future parole violation is not only speculative but is also a consequence over which [petitioner] exercises control.").   In short, Fletcher is not likely to suffer a future injury from continued implementation of the challenged federal reparole regulation.  Hence, he lacks standing to pursue prospective injunctive or declaratory relief.

## CONCLUSION

For the foregoing reasons, the Court will deny Fletcher's motion for reconsideration and will grant defendants' motion to dismiss the remaining claims for lack of subject matter jurisdiction.  However, the Court will vacate its prior decision in part -- that is, the qualified

immunity holding, published at <u>Fletcher</u>, 481 F. Supp. 2d at 166-68.  Fletcher's pending motion

for summary judgment on the merits will be denied without prejudice.  A separate order has been

issued on this date.


_____/s/_____
JOHN D. BATES
United States District Judge

Dated:  May 6, 2008